**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| **CAROL MCGREW**, <br><br>          Plaintiff, <br><br> v. <br><br> **HOWMEDICA OSTEONICS CORP.**, <br><br>          Defendant. | Case No.:     3:14-cv-430 <br><br> Judge:     Hon. Staci M. Yandle <br><br> **PLAINTIFF CAROL MCGREW'S AMENDED INITIAL REQUESTS FOR CASE SPECIFIC INFORMATION** |

To:   Paul Asfendis
      Gibbons PC
      One Pennsylvania Plaza
      37th Floor
      New York, NY 10119

*Counsel for Defendant Howmedica Osteonics Corp.*

Plaintiff Carol McGrew, by and through her counsel, James G. O'Brien, Esq., and pursuant to Federal Rules of Civil Procedure 26, and 36, propounds upon Defendant Howmedica Osteonics Corp. the following Requests for Admissions.

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff Carol McGrew requests Defendant Howmedica Osteonics Corp. admit the truth of the matters described in the Requests for Admissions below. Said admissions shall be due to the offices of ZOLL, KRANZ & BORGESS, LLC, 6620 W. Central Avenue, Suite 100, Toledo, Ohio 43617, **on July 25, 2015** (thirty days after service of this document).

**DEFINITIONS**

1.     "Document" and "Documentation" as used in these requests is coextensive with the meaning of the terms "documents," "electronically stored information," and "tangible things" as

used in Federal Rule of Civil Procedure 34, and shall have the broadest possible meaning and interpretation ascribed to those terms under Federal Rule of Civil Procedure 34.

Consistent with the above definition, the term "document" shall include, without limitation, electronic data, electronic databases, electronic media, and any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced **communication** (as defined below) or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, emails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and **communications** of any type including but not limited to video files, audio files, inter- and intra-office **communications**, questionnaires, surveys, charts, graphs, photographs, films, webcasts, PowerPoints, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in, or generated on any electronic transfer or storage system, any preliminary versions, drafts, or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any

of the foregoing now in the possession, custody, or control of you, your affiliated companies (including parent companies, subsidiaries, sister companies, purchased companies, and divested companies) or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and /or persons acting on your behalf.

2. "Electronic data," "electronic database," "database," and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, metadata, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial, or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or transmittals, output resulting from the use of any software program, including word processing **documents**, spreadsheets, database files, charts, graphs, and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file, or file fragment. Such terms include any and all items stored in computer memories, on hard disks, floppy disks, CD-ROMs, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM, and ROM, hosted data storage, and on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers, and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

3. "Electronic media" means any magnetic, optic, or other storage media device used to record, hold, or store electronic data. Electronic media includes hardware owned, leased, or accessed over a network including the Internet. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, hosted data storage, and on or in any other vehicle for digital data storage and /or transmittal.

4. "Native electronic format" means the state of an electronic file as it presently exists on any computer, electronic media device, network, or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, cloud computing, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated, or modified in any way.

5. "Network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct; that is, it includes wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place. That is, it includes peer-to-peer networks, adhoc networks, cloud-based networks, and networks utilizing a mainframe host or client/server model to facilitate data transfer.

6. "Computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital

assistants or PDA's), minicomputers, cloud computers, hosted storage computers, virtualized environments, and mainframe computers. "Computer system," when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

7. "Communication," "communicate," "correspondence," and "correspond" mean and refer to any oral, written, spoken, or electronic transmission of information, including, but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, emails, instant messages, test messages, postings, instructions, conferences, seminars, or any other exchange of information within **your** organization or between **you** and any other person or entity.

8. "Relating to," "relate to," "relating," "referring to," "refer to," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including **documents** attached to or used in the preparation of or concerning the preparation of the **documents**.

The terms **relating to**, **referring to**, and **concerning** are intended broadly, but not in a way designed to seek information that is irrelevant or beyond the scope authorized by Rule 26(b). Accordingly, the terms should be understood and read in their commonsense meaning: "to have to do with, to be of importance to, to involve, or to in some manner, direct or indirect, to evidence, define, describe, or explain." Therefore, any objection that a request is overbroad based on the use of one these terms is not appropriate.

9. "Person" means natural person, as well as corporate and/or governmental entity.

10. "Identify" or "identity" with respect to either natural persons or entities, means to give, to the extent known, the person's or entity's full name and present or last known address and telephone numbers, and when referring to a natural person, additionally, the present or last know place of employment.

11. "Identify" or "identity" with respect to a **document** means to give, to the extent known:

   a.) the type of **document** (e.g., letter or memorandum, chart, photograph, sound reproduction, etc.);

   b.) its author;

   c.) its addressee(s);

   d.) the address(es) of the addressee(s);

   e.) its date;

   f.) its subject matter and contents;

   g.) the **identities** of any recipients of copies;

   h.) the person or persons now having custody of the original copies; and,

   i.) if the **document** was, but is no longer in your possession or control or is no longer in existence:

       i.) whether such **document** is missing, lost, or destroyed;

       ii.) the circumstances of its loss or destruction;

       iii.) and the **identity** of the **document's** last custodian;

12. A **document** is deemed to be in your "possession, custody or control" if it is in your physical custody, or if it is in the physical custody of another person or entity and you: (a) own such **document** in whole or in part; (b) have a right by contract, statute, relationship, or otherwise to use, inspect, examine or copy such **document** on any terms; (c) have an

understanding, express or implied, that you may use, inspect, examine, or copy such **document** on any terms; or (d) have, as a practical matter, been able to use, inspect, examine or copy such **document** when you have sought to do so. Such **documents** shall include, without limitation, **documents** that are in the custody of your attorney(s), employees, staff, representatives, affiliated companies, parent companies, subsidiaries, and agents.

13. "Person" means natural person, as well as corporate and/or governmental entity.

14. The connectives "and" and "or" mean either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15. The use of the singular includes the plural and vice versa.

16. "You" and "Your" mean Howmedica Osteonics Corporation and Stryker Corporation and shall include their parents, subsidiaries, and affiliates and any other related entities, as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors, or other representatives, including all corporations and entities owned by or affiliated with Howmedica Osteonics Corporation and Stryker Corporation. "You" and "Your" also include all Howmedica Osteonics Corporation's and Stryker Corporation's predecessor business entities—including but not limited to SpineCore—as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors, or other representatives.

17. "Plaintiff" or "Plaintiffs," whether in the singular or plural form, mean Carol McGrew.

18. "Defendant" or "Defendants," whether in the singular or plural form, mean Howmedica Osteonics Corp..

19. "Study" means any research, analysis, or examination, inspection, or investigation (including, but not limited to, clinical investigations) or other activity by which data or information is acquired for the purpose of analysis or understanding. The term includes studies which have been completed and studies that are still in progress regardless of whether such activity took place within or without the United States. It should include information and data acquired from such study regardless of the stated or original purpose of the study.

20. All terminology related to "adverse events" has the meanings given it by the International Organization for Standardization ISO 14155:2011 ("Clinical investigation of medical devices for human subjects — Good clinical practice") publication:

    a.) "Adverse Event" (AE): any untoward medical occurrence, unintended disease or injury, or untoward clinical signs (including abnormal laboratory findings) in subjects, users or other persons, whether or not related to the investigational medical device.

        i.) Note 1 to entry: This definition includes events related to the investigational medical device or the comparator.

        ii.) Note 2 to entry: This definition includes events related to the procedures involved.

        iii.) Note 3 to entry: For users or other persons, this definition is restricted to events related to investigational medical devices.

    b.) "Adverse Device Effect" (ADE): **adverse event** related to the use of an investigational medical device.

        i.) Note 1 to entry: This definition includes adverse events resulting from insufficient or inadequate instructions for use, deployment, implantation,

        installation, or operation, or any malfunction of the investigational medical device.

    ii.) Note 2 to entry: This definition includes any event resulting from use error or from intentional misuse of the investigational medical device.

c.) "Serious Adverse Event" (SAE): **adverse event** that

    i.) led to death,

    ii.) led to serious deterioration in the health of the subject, that either resulted in

(1) a life-threatening illness or injury, or

(2) a permanent impairment of a body structure or a body function, or

(3) in-patient or prolonged hospitalization, or

(4) medical or surgical intervention to prevent life-threatening illness or injury or permanent impairment to a body structure or a body function,

    iii.) led to foetal distress, foetal death or a congenital abnormality or birth defect

(1) Note 1 to entry: Planned hospitalization for a pre-existing condition, or a procedure required by the CIP, without serious deterioration in health, is not considered a serious adverse event.

d.) "Unanticipated Serious Adverse Device Effect" (USADE): **serious adverse device effect** which by its nature, incidence, severity or outcome has not been identified in the current version of the risk analysis report

        i.) Note 1 to entry: **Anticipated serious adverse device effect (ASADE)** is an effect which by its nature, incidence, severity or outcome has been identified in the risk analysis report.

21. "CerviCore" means, as broadly as possible, whether in the singular or the plural, any cervical spinal device, whether only proposed, designed, or fully manufactured, that **you**, Stryker, Howmedica, or SpineCore ever referred to as "CerviCore" (or any variation or derivative of that name); ever referred to in, by, or as IDE application G040910; ever referred to in, by, or as clinical trial CT-002-04; or ever referred to in, by, or as clinical trial NCT00588601, including its predecessors, all versions, its successors, and all derivations, final or non-final, of the device. This includes, but is not limited to, all cervical spine devices developed by SpineCore Inc. and/or the Erricos, its versions and derivations, whether final or not final, and its predecessors and its successors. This also includes, if different, all cervical spine implants developed by any Stryker or Howmedica division or company if those implants were ever referred to by the name CerviCore (or any variation or derivative or that name), whether internally or externally. CerviCore expressly includes both the initial investigation and the continued access investigation.

22. "Study" includes any research, analysis, or examination, inspection, or investigation (including, but not limited to, clinical investigations) or other activity by which data or information is acquired for the purpose of analysis or understanding. The term includes studies which have been completed and studies that are still in progress regardless of whether such activity took place within or without the United States. It should include information and data acquired from such study regardless of the stated or original purpose of the study.

23. "Test" includes any kind of examination, experiment, scientific analysis or other inquiry or undertaking seeking to develop or acquire information or data. It should include information and data acquired from such tests regardless of the stated or original purpose of the test. The term is intended to include tests which have been completed and tests which are still in progress regardless of whether such activity took place within or outside the United States. The term "test" is often used in conjunction with the term study. A request for information concerning a test or study should be construed as including the following documents: the protocol for the conduct of the test/study, a statement of the conditions under which the test/study was intended to be conducted, a statement of the conditions under which the test/study was actually conducted, documents requesting that the test/study be performed, documents ordering that the test/study be performed, documents containing the original raw test/study data, documents containing the written test/study report and all attachments thereto, documents containing the test/study specifications, including the pass-fail criteria, any summary, abstract, analysis, compilation, including evaluation or interpretation of the test/study and all investigators or entities, universities, and/or laboratories involved in the testing.

24. "Foreign regulatory body" means any organization, including but not limited to the regulatory bodies that regulate medical devices such has spinal implants in Japan, Canada (Health Canada), Australia (TGA), the United Kingdom (MDA/MHRA) and any other competent authority or other entity within the European Union that is involved in the regulation of pharmaceuticals or medical devices.

25. "Study" includes the **CerviCore** clinical trial, sometimes referred to as the "CerviCore© Intervertebral Disc for the Treatment of Radicular Symptoms Associated with Loss of Disc Height, Disc/Osteophyte Complex or Herniated Disc of the Cervical Spine," at all study sites and

including the pivotal study and any and all continued access studies. **Study** expressly includes both the initial **CerviCore** investigation and the **CerviCore** continued access investigation.

26. "Study site," "Washington University Medical Center," and "the Washington University Medical Center study site" mean **your CerviCore** study site in St. Louis, Missouri, sometimes identified as "Site ID 50" at which Carol McGrew's **CerviCore** device was implanted and/or the **CerviCore** study site at which Carol McGrew was treated. The study site definition includes:

   a.) **CerviCore** Study Investigator Dr. Neill M. Wright MD;

   b.) all employees of Dr. Wright;

   c.) all other study investigators at **the Washington University Medical Center study site**;

   d.) all employees of other study investigators at **the Washington University Medical Center study site**;

   e.) **the Washington University Medical Center study site** Institutional Review Board (IRB) including all members and staff of the IRB; and,

   f.) all other employees of **the Washington University Medical Center study site**.

27. Unless otherwise indicated in an individual request, the "relevant time period" for the information sought is: From when you or your predecessor entity first began developing or designing the CerviCore device (including its predecessor devices) through the present..

### INSTRUCTIONS FOR ANSWERING REQUESTS FOR ADMISSIONS

1. In responding to these Requests for Admissions, you are required to fairly respond to the substance of the matter of each Request.

2. For any Request to which you do not admit to the matter asked, you must either:

      a.)    specifically deny the matter; or,

      b.)    state in detail why **you** cannot admit or deny the matter.

3.    If **you** assert a lack of knowledge as to any Request, **you** must state the reasonable inquiry **you** made into the matter and the basis for **your** claimed insufficiency of knowledge.

4.    Any Request to which **you** do not respond on or before July 25, 2015 will be deemed admitted.

5.    If any Request is deemed to call for privileged or otherwise protected information, **you** must provide the following information in a written response, designating and identifying information withheld on grounds of privilege:

      a.)    the reason for refusing to answer the Request for Admission; and,

      b.)    a statement of the legal basis for the claim of privilege, work product, or other ground for non-disclosure.

6.    These Requests impose a continuing obligation upon **you**. If, after responding to these Requests, additional information becomes available to **you**, **you** are required to supplement these Requests for Admission with that additional information.

7.    All information sought shall include all information that relates in whole or in part to the **relevant time period**, or to events or circumstances during such **relevant time period**, even though dated, prepared, generated, or received prior to **relevant time period**.

8.    The headings used herein are not intended to limit in any way the scope of the requests.

# REQUESTS

I. <u>The Washington University Medical Center Study Site Relationship</u>

**First Request to Admit**

If, in response to the contemporaneously served Fourth Request to Produce, **you** elect to produce call reports in an agreed upon format, admit those reports are authentic and are business records **you** kept in the ordinary course of **your** business.

**Response:**

II. <u>Communication of adverse events to the Washington University Medical Center study site</u>

**Second Request to Admit**

Admit **you** were aware of **adverse events**, whether or not **related to** Carol McGrew, that **you** did not report to **the Washington University Medical Center study site** or to any study investigator associated with that **study site**.

**Response:**

**Third Request to Admit**

Admit **you** were aware of **adverse device effects**, whether or not **related to** Carol McGrew, that **you** did not report to **the Washington University Medical Center study site** or to any study investigator associated with that **study site**.

**Response:**

**Fourth Request to Admit**

Admit **you** were aware of **serious adverse events**, whether or not **related to** Carol McGrew, that **you** did not report to **the Washington University Medical Center study site** or to any study investigator associated with that **study site**.

**Response:**

**Fifth Request to Admit**

Admit **you** were aware of **unanticipated serious adverse device effects**, whether or not **related to** Carol McGrew, that **you** did not report to **the Washington University Medical Center study site** or to any study investigator associated with that **study site**.

**Response:**

III.   <u>Adverse events, Adverse Device Effects, Serious Adverse Events, and Unanticipated Serious Adverse Device Effects</u>

**Sixth Request to Admit**

Admit **you** were aware of one or more **adverse events related to** Carol McGrew.

**Response:**

**Seventh Request to Admit**

Admit **you** did not report every **adverse event related to** Carol McGrew to the FDA.

**Response:**

IV.     *Signature of Requesting Party*

June 25, 2015, Amended August 11, 2015

                                                            Respectfully Submitted,

                                                            */s/ James G. O'Brien*
                                                            James G. O'Brien (0088460)
                                                            David W. Zoll (0008548)
                                                            ZOLL, KRANZ & BORGESS, LLC
                                                            6620 W. Central Ave., Suite 100
                                                            Toledo, OH 43617
                                                            Tel.    (419) 841-9623
                                                            Fax    (419) 841-9719
                                                            Email   david@toledolaw.com
                                                            Email   jim@zkblaw.com

                                                           *Counsel for Plaintiff Carol McGrew*

## CERTIFICATE OF SERVICE

I certify a true and accurate copy of the foregoing was filed through the Court's electronic CM/ECF system on this date and that all parties of record may access the filing through that system.

August 11, 2015   */s/ James G. O'Brien*
James G. O'Brien (0088460)